**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **WALTER W.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Case No. 4:22-CV-215-CDL** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

## I.     Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423.  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Background and Procedural History

The plaintiff filed an application for disability and disability insurance benefits on January 15, 2020. (R. 15). He alleges that he became disabled due to diabetes, a bone infection in his toe, neuropathy, high blood pressure, and high cholesterol. (R. 67). The plaintiff later also submitted subsequent medical evidence from 2021 indicating that he has severe degenerative disc disease. (*See* R. 25). He was 51 years old on the alleged onset date of December 13, 2019. (R. 66). Prior to the onset date, the plaintiff worked as a maintenance worker, service attendant, and fast-food restaurant manager. (*See* R. 57).

2

The Commissioner denied plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (R. 155-156). The ALJ held a telephone hearing on October 26, 2021. (R. 41-61). Testimony was given by plaintiff and a Vocational Expert (VE).

The plaintiff testified during the hearing that due to back pain, he can only stand for up to 45 minutes at a time before needing to sit down. (R. 48). At times, his back pain requires him to lie down. (R. 49). He has good days and bad days. *See id*. His back pain shoots down his hips, into his legs, making his knees weaken. (R. 51). The plaintiff testified that he sometimes took ibuprofen for his back pain, and he was scheduled to receive his first injection soon.

He drives his children to school and drives his teenaged son to his work, located 30 minutes away, a few times a week. He can no longer work outside on his hobbies, repairing bicycles and lawnmowers, because of heat strokes.

On November 4, 2021, the ALJ issued a decision denying benefits. (R. 15-35). On March 15, 2022, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-4). Plaintiff filed a timely appeal in this Court, which has jurisdiction to review the ALJ's November 4, 2021 decision under 42 U.S.C. § 405(g).

III. **The ALJ's Decision**

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At

step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ found that the plaintiff has not performed substantial gainful activity since his alleged onset date of December 13, 2019. (R. 17). At step two, the ALJ determined that the plaintiff has severe impairments, including diabetes mellitus with residual complications, obesity, and degenerative disc disease. *Id*. The ALJ found the plaintiff's hypertension, hyperlipidemia, left hip bursitis, and left shoulder tendinitis are non-severe. (R. 18). The ALJ further found that plaintiff's mental impairment of major depressive disorder is non-severe. *Id*.

The ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing.

4

*Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has no limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 19).

At step three, the ALJ found that plaintiff's impairments do not meet or equal the severity criteria for any Listing, specifically addressing Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 6.05 (chronic kidney disease with impairment of kidney function), and 9.00 (endocrine disorders), and the Commissioner's guidelines for consideration of obesity. (*See* R. 19-22).

At step four, after considering the entire record, the ALJ determined that plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. The [plaintiff] is able to lift up to 20 pounds occasionally and 10 pounds frequently. He is able to sit, stand or walk 6 hours in an 8-hour day. He is limited to occasional climbing of ramps, stairs, and occasional balancing, stooping, kneeling, crouching, and crawling. The [plaintiff] is not able to climb ladders, ropes, or scaffolding, and he is not able to tolerate exposure to unprotected heights. Only occasional use of the lower extremities for operation of pedals and foot controls.

(R. 22). The ALJ indicated that in making this finding, he considered all of plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling (SSR)

16-3p, as well as medical opinions and prior administrative findings, in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. *Id.*

Citing testimony by the VE as to a hypothetical person with plaintiff's RFC, the ALJ found at step four that plaintiff can perform his past relevant work as a fast-food manager, as generally performed. (R. 28). Accordingly, the ALJ found at step four that plaintiff is not disabled.

The ALJ also proceeded to make alternative findings at step five. Based on the VE's testimony as to a hypothetical person with plaintiff's age, education, and RFC, the ALJ found the plaintiff can perform the requirements of representative occupations including:

> ***Bench assembler***, light exertion, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 706.684-022, with 15,000 jobs existing in the national economy;
>
> ***Merchandise marking clerk***, light exertion, unskilled, SVP level 2, DOT # 209.587-034, with 100,000 jobs existing in the national economy; and
>
> ***Mail clerk***, light exertion, unskilled, SVP level 2, DOT # 209.687-026, with 10,000 jobs existing in the national economy.

(R. 28-29). Accordingly, the ALJ also found plaintiff is not disabled at step five. (R. 30).

## IV.    Discussion

The plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered the medical and other evidence in the record and substantial evidence supports the ALJ's decision.

### A.     State Agency Reviewing Consultants

The plaintiff argues that the ALJ improperly relied on the administrative findings of reviewing physicians to support the RFC determination. The ALJ's decision must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings" in a claimant's record. 20 CFR § 404.1520c(b). The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how she considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id.* § 404.1520c(b)(2). The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id.* § 404.1520c(c).

In an opinion dated May 5, 2020, Matheen Khan, M.D. found the plaintiff retained the RFC for light work, with occasional lifting and/or carrying of 20 pounds and frequent lifting or carrying of 10 pounds. (R. 86). Dr. Khan found the plaintiff had no additional limitations in pushing or pulling, nor any postural, manipulative, visual, or communicative limitations. *Id*. On reconsideration, Luther Woodcock, M.D. considered additional evidence, including the December 29, 2020 consultative examination of David Young, D.O. (R. 98, 109). Dr. Woodcock noted that the plaintiff's updated self-report indicated he had physical limitations and pain, but that he was able to drive, go out alone, and shop in stores. (R. 104). Dr. Woodcock opined on December 30, 2020 that the plaintiff could perform the full range of light work, with no further limitations. (R. 123-125; *see* R. 27).

After these opinions were rendered, the ALJ received additional medical records from 2021, and admitted these additional records into evidence at the hearing. (R. 44). On March 25, 2021, the plaintiff was examined by Darnell Blackmon, M.D., reporting back pain that radiated below the knees. (R. 822, 940). As noted in the ALJ's decision, Dr. Blackmon observed pain with palpation to the lumbar spine, mild paresthesia in the plaintiff's legs, and positive straight-leg raise testing. (R. 25; *see* R. 823). Dr. Blackmon also remarked that the plaintiff's x-ray images showed "bone-on-bone" incursion in the lumbar disks. (*See* R. 25). The ALJ's decision explained:

> It appears from physical therapy notes that it was the [plaintiff's] flexibility, which was significantly limited in relation to the impairment of his spine. The [plaintiff] began outpatient physical therapy on April 5, 2021, and he did well with treatment. Range of motion increased and left hip pain resolved. At the time of discharge on May 4, 2021, the therapist indicated the [plaintiff] could likely manage symptoms at home with effort.

(R. 25 (internal citations omitted); *see* R. 843-847).

Despite the improvement noted in the ALJ's decision, the plaintiff points out that physical therapy was not successful in reducing his back pain. Dr. Blackmon noted on May 5, 2021 that the plaintiff's condition was "worse," and referred the plaintiff to Fernando Villamil, M.D. on September 9, 2021. (R. 807; *see* R. 997-999). The plaintiff reported that his pain was "severely affecting" his daily activities, and that he could not sit or stand more than 10 to 15 minutes at a time. (R. 990).[1] Dr. Villamil ordered an MRI, which revealed

---

[1]     At the ALJ hearing, the plaintiff reported that on a "bad day," he can stand for 45 minutes to an hour to cook a meal. (R. 50).

severe multilevel degenerative disc disease and severe bilateral foraminal stenosis at L4-5 and L5-S1. *Id*.

The ALJ discussed this evidence, noting that

> [t]he Orthopaedic Center treated the [plaintiff] on September 9, 2021. At that time, the [plaintiff] had decreased range of motion of the spine due to discomfort, and abnormal deep tendon reflexes. However, sensation and motor strength were normal. X-rays revealed generalized spondylosis with decreased height at L5-S1. On September 27, 2021, the [plaintiff] underwent magnetic resonance imaging (MRI) of the lumbar spine. The diagnostic impression was severe multilevel degenerative disc disease.

(R. 25 (internal citations omitted)). The ALJ further noted Dr. Villamil's observation of clinical and imaging findings consistent with lumbar degenerative disc disease and stenosis "with neurogenic claudication." *Id*. The ALJ also acknowledged evidence that the plaintiff's back pain continued to worsen and "severely affected" his daily activities. (R. 26). However, the ALJ also noted that the plaintiff continued to drive "frequently" for 30-minute trips, and that on several occasions, the plaintiff reported activities that included running errands, mowing with a riding mower, trimming trees, fishing, and gardening. *Id*.

The ALJ found that a limitation to light-exertion work was well-supported in the record. (R. 27). He noted that the state agency reviewing consultants' 2020 findings were "supported . . . by a detailed description of the medical evidence of record," including the plaintiff's primary care treatment records and his 2019 hospitalization and treatment for a diabetic neuropathic ulcer in the right foot. *Id*. However, after recounting subsequent evidence concerning the plaintiff's back pain and degenerative disc disease, the ALJ explained that,

9

the totality of the record, including evidence received at the hearing level, is consistent with additional postural, a different environmental, and additional lower extremity manipulative restrictions. Specifically, the MRI showed severe degenerative changes of the lumbar spine, there is leg pain. There is ongoing monitoring of diabetes mellitus with the presence of numbness documented on objective examination of Dr. Young. Postural restrictions are consistent with the musculoskeletal findings, there is pain and reduced sensation causing limited use of the lower extremities. Given the nature of the combination of impairments, the undersigned finds the [plaintiff] should avoid unprotected heights. The State agency assessments are persuasive only in part, and the [plaintiff] would have the above limits from the alleged onset date through the date of this decision.

(R. 27-28 (internal citations omitted)).[2] In short, the ALJ found that, although the reviewing consultants' findings were partially persuasive, additional evidence that was not available to the reviewing physicians justified additional limitations—specifically, "additional postural, different environmental, and additional lower extremity manipulative restrictions." (R. 27).

The plaintiff contends that, in light of the more recent evidence discussed *supra*, and his reports of worsening back pain, the ALJ's decision could not properly rely on the earlier findings of Drs. Khan and Woodcock. However, the plaintiff points to no authority

---

[2]      Dr. Khan also found the plaintiff should avoid concentrated exposure to extreme heat. (R. 87). It is not clear why the ALJ's decision omitted this limitation. However, the plaintiff does not raise this issue or argue that it constitutes a harmful error. The plaintiff's hearing-level attorney also did not raise this discrepancy or elicit contrary testimony from the VE. Accordingly, the plaintiff has waived any objection as to the absence of a heat-exposure limitation in the RFC. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument.") (citation and quotation omitted).

prohibiting the ALJ from considering the prior administrative findings—to the contrary, the ALJ was *required* to consider "all of the relevant medical and other evidence" in the record in assessing the plaintiff's RFC. 20 C.F.R. § 404.1545(a)(3). It was not reversible error for the ALJ to weigh the reviewing consultants' earlier opinions along with subsequent medical evidence. *See* 20 C.F.R. § 404.1520c(b)(2), (c)(5) ("When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.").

Nonetheless, the plaintiff contends that the reviewing consultants' opinions (issued in May of 2020 and January of 2021) were rendered stale due to subsequent evidence documenting the plaintiff's lumbar degenerative disc disease. (Doc. 16 at 9). The plaintiff cites *Estes v. Berryhill*, Case No. 17-cv-130-JED-GBC, 2018 WL 7813742 (N.D. Okla. Sept. 28, 2018) in asserting that the reviewing consultants' opinions were "stale" evidence. However, that case is inapposite. In *Estes*, the ALJ adopted a mental RFC consistent with the findings of a reviewing consultant, Dr. H. The court found that, "[a]lthough the ALJ reviewed and discussed other evidence . . . . it is clear that he relied quite heavily on the opinion of a nonexamining physician who did not include significant medical records in her review," noting that "[n]ot only did the ALJ state that he was giving Dr. H's opinion 'great weight,' he adopted Dr. H's mental RFC findings essentially verbatim"; thus, "the primary piece of evidence used in making the mental RFC determination . . . [was] inherently problematic," warranting reversal. *Id*. at *3.

11

Here, as noted, the ALJ accorded only partial weight to the reviewing consultants' opinions. Unlike in *Estes*, there was no omission of relevant evidence existing prior to the state agency consultants' review. Furthermore, the ALJ assessed additional limitations in the RFC, based in part on the ALJ's review of the plaintiff's 2021 medical treatment records. As such, *Estes* is not analogous.

The plaintiff argues that the ALJ's decision failed to explain how the 2021 medical records supported a finding that the plaintiff can perform the standing and walking required for light work. The ALJ concluded that this evidence did not warrant additional limitations in the RFC determination. The ALJ explained that

> [O]n May 13, 2021, the [plaintiff] received an orthopedic referral for low back pain. At that time, gait was normal, there was normal lumbar lordosis, there was no tenderness to palpation of the lumbar spine. There was paraspinal muscle tightness. However, the lumbar spine was stable, and range of motion was normal.
>
> The [plaintiff] also developed dehydration and acute renal failure after working in the heat out in his yard in May 2021, but with fluids kidney labs returned to normal, and with rest and water intake, the [plaintiff] felt "normal" again. Home blood sugars had been around 110, he was taking oral diabetes medications regularly and home blood pressures were also within a normal range (130/80). The [plaintiff's] statements about the intensity, persistence, and limiting effects of symptoms are not fully consistent with his activities. The degree of limitation in activities of daily living is not consistently reported over the longitudinal record. The occurrence of acute symptoms, including decreased kidney function and lower extremity wounds improved with appropriate medical treatment. The [plaintiff] has been complaint [sic] with medications. He testified he does not experience side effects from his diabetes mellitus oral medications, and he takes only over-the-counter pain medication for the back pain he experiences. There is severe

> degenerative disc disease, but NEO Health evidence in May 2021 showed normal gait and normal lumbar spine range of motion.

(R. 26 (internal citations omitted)).

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *See Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004). Here, the ALJ's decision discussed the 2021 evidence and adequately explained why the ALJ found that, although the medical evidence indicated some limitations, the limitations were not disabling. The ALJ's discussion of the evidence was adequate, in that it was reasonable and consistent with the applicable legal standards. *See Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir. 1994) (holding that court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion); *see also Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views).

The ALJ's decision here is unlike those in other cases the plaintiff relies upon. In *Natalie L.F. v. Kijakazi*, 2022 WL 265870, at *4 (N.D. Okla. Jan. 28, 2022), the ALJ had found the plaintiff to have severe mental impairments, rejecting the state agency reviewing consultants' findings that she had none. However, the ALJ also rejected the medical source statement of an examining source, Uyen Dinh, APRN, opining that the plaintiff had marked and moderate limitations in numerous areas of mental functioning and that the plaintiff would require frequent absences and time off-task in a work setting. The court held that

the ALJ failed to properly evaluate Ms. Dinh's opinion and also failed to provide a sufficient narrative explaining the RFC determination. The court noted that the ALJ "found all the medical opinions of record unpersuasive and found [the plaintiff's] subjective complaints not entirely consistent with the record, leaving the Court unable to determine what evidence or medical opinions, if any, support the RFC assessment." *Id*. at *4. The ALJ had also ignored the plaintiff's consistent reports of her symptoms and the evidence that she frequently required adjustments to her medication, leading the court to conclude that the ALJ improperly "cit[ed] only evidence favorable to his finding of non-disability." *Id*. at *5.

Here, the plaintiff has not shown any comparable deficiency in the ALJ's consideration of the prior administrative findings or other evidence of record. As explained *supra*, the ALJ's decision satisfied the articulation requirement with respect to the reviewing consultants' opinions. The ALJ also reviewed and weighed the 2021 medical evidence, along with the prior administrative findings, in making the RFC determination. The ALJ discussed imaging demonstrating "severe multilevel degenerative disc disease" and generalized spondylosis at L5-S1, and found the plaintiff's degenerative disc disease is a severe impairment that warranted "additional postural[] . . . and . . . lower extremity manipulative restrictions" in the RFC. *Id*. The ALJ also specifically noted evidence of "pain and reduced sensation causing limited use of the lower extremities," and evidence that the plaintiff's back pain did not improve with conservative treatment and "severely affected his activities of daily living." (R. 26-27). However, the ALJ explained that throughout his "consistent and routine treatment," the plaintiff generally had a normal gait

and range of motion, and normal strength, respiration, and cardiovascular function. (R. 25). Moreover, physical therapy helped, and despite the plaintiff's back pain, his therapist identified the plaintiff's "home choices" and continuing activities as the biggest problem. (R. 26; *cf.* R. 816-817 (noting the plaintiff "continues to make poor choices related to lifting (ie lifting a riding lawn mower into the back of a pickup truck by himself) and generally does not watch his body mechanics," and stating that he "can likely manage his [symptoms] at home but will have to make a concentrated effort to work on his [home exercise program] and use good body mechanics").

The ALJ's decision reflects that the ALJ appropriately admitted and considered all of the relevant evidence in the record, including the 2021 evidence relating to the plaintiff's degenerative disc disease.[3] The ALJ reasonably concluded that the evidence justified certain exertional limitations in addition to those found by the reviewing physicians, but not to the full extent the plaintiff alleged. Thus, the ALJ concluded that the plaintiff's symptoms limit him, but not "to a greater degree than the limited range of light work described in [the ALJ's] decision." *Id*. As such, reversal is not warranted based on the ALJ's exertional RFC findings.

---

[3]     The Court notes that the plaintiff's brief did not present any argument that the ALJ had a duty to further develop the record in light of more recent evidence. To the contrary, the plaintiff's attorney affirmed in the ALJ hearing that the record was complete upon the admission of the 2021 MRI records. (R. 44).

## B. Subjective Statements

The plaintiff argues that, in finding the plaintiff is capable of light-exertion work, the ALJ improperly discounted his subjective reports of back pain and limitations related to his physical impairments. Specifically, the plaintiff argues that the ALJ improperly discounted the plaintiff's limitations from his back pain, including that plaintiff reported he can only lift up to 10 pounds, can only stand for 30 to 45 minutes at a time, and that he must lie down to ease his back pain.

A claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. § 404.1529(a). In assessing the intensity and persistence of a claimant's pain, the Commissioner will consider objective medical evidence and will "carefully consider any other information [a claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c). In evaluating such statements, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] Consistency determinations "are peculiarly the

---

[4]     While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012). *See Paulek v. Colvin*, 662 F. App'x

province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference"). However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record"). Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

---

588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

The applicable regulations further explain that in evaluating pain, the Commissioner considers factors including

> (i) [the claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum*, 385 F.3d at 1273-74 (quoting *Hargis v. Sullivan,* 945 F2d. 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

Here, the ALJ recounted relevant portions of the plaintiff's hearing testimony. The ALJ specifically noted that the plaintiff "testified he is able to lift 8 to 10 pounds, for a period of 2 to 5 hours a day," but that "[i]f he does more, he gets tired and hurts and he may have to lie down." (R. 23). The ALJ also acknowledged the plaintiff's testimony that he can stand for 30 to 45 minutes, his back pain was progressively worsening, and that to deal with the pain, he may have to lie down for as long as two hours. *Id*.

As discussed *supra* Part IV.A, the ALJ determined that the plaintiff's degenerative disc disease warranted further limitations in the RFC beyond those assessed by the state agency reviewing consultants, including postural restrictions and limited use of his lower extremities. (R. 27-28). However, the ALJ found that the degree of limitation alleged by the plaintiff was not entirely supported by the medical evidence in the record. (R. 23-24). In explaining this determination, the ALJ referred to evidence in the record that supports this conclusion. For example, medical examinations indicated that, despite worsening pain and discomfort, the plaintiff generally retained normal sensation and motor strength. The ALJ noted that "over the course of consistent and routine treatment," the plaintiff "has generally displayed a normal gait and normal musculoskeletal range of motion, . . . intact sensation, normal motor strength, and normal cardiovascular and respiratory function on physical examinations." (R. 25).

The ALJ also addressed other relevant factors identified in SSR 16-3p. For instance, although conservative treatment did not resolve the plaintiff's symptoms, and his symptoms significantly affected his activities of daily living, physical therapy notes reflect that the plaintiff reported continuing with activities such as chores, running errands, driving

18

his son to work and back, mowing, and gardening. (R. 26). He reported increased pain, but that the pain was still "tolerable" and that it improved with Flexeril and ibuprofen. *Id*. The plaintiff also declined x-rays and additional medication options. *Id*. The ALJ further noted that the plaintiff's reported degree of limitation in activities of daily living varied over time, and that his "acute symptoms, including decreased kidney function and lower extremity wounds[,] improved with appropriate medical treatment." *Id*.

As such, the ALJ's decision provided specific reasons for his assessment of plaintiff's subjective statements, with references to relevant evidence in the record, as required by SSR 16-3p. The plaintiff argues that the ALJ failed to account for other examination findings that "bolster, rather than undermine," his allegations. For instance, examinations reflect that the plaintiff had a slow gait on one occasion, a positive straight-leg raise test, back pain and tenderness on multiple occasions, and tight paraspinal muscles. (Doc. 16 at 13). But as discussed *supra*, the ALJ's decision specifically addressed this evidence, while explaining how the ALJ weighed this evidence against other portions of the record indicating relatively normal findings.

Similarly, the plaintiff argues that the ALJ did not properly weigh evidence that the plaintiff was persistent in seeking treatment to alleviate his pain. But the ALJ acknowledged this evidence and provided a reasoned explanation of how he weighed it. The ALJ discussed the plaintiff's physical therapy records in April and May of 2021, but noted that at intake on April 5, 2021, the plaintiff "reported helping lots with the inside chores, running errands, cooking, mowing with a riding mower, trimming trees, gardening, and working on small engines." (R. 26). The ALJ noted that physical therapy helped the

plaintiff, but that "the biggest issue identified by the physical therapist was the [plaintiff's] home choices[, including] lifting a riding lawn mower into a pickup by himself and playing football with his children." (R. 26). The ALJ noted that at the time of the hearing, the plaintiff was scheduled to receive his first injection for back pain. (R. 23). However, the plaintiff also admitted that before then, he had only taken ibuprofen for back pain and did not have to take it every day. *See id*. Accordingly, the ALJ's decision shows that he appropriately considered the plaintiff's attempts to relieve his back pain, while also weighing evidence that the plaintiff's pain did not limit his functioning to the extent alleged.

The plaintiff faults the ALJ for relying on the plaintiff's self-reported activities. But under SSR 16-3p, ALJs are directed to consider an individual's daily activities in assessing the consistency of subjective statements. As discussed above, the ALJ's decision cited substantial evidence supporting the finding that, despite some limitations, the plaintiff can perform light-exertion work with the additional restrictions incorporated in the RFC.

While plaintiff argues that the record shows greater limitations, substantial evidence supports the ALJ's conclusion that the medical evidence in the record did not support the degree of limitation alleged. The ALJ also adequately explained the link between the evidence and her assessment of Plaintiff's subjective statements. *See Kepler*, 68 F.3d at 391; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record); *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where, *inter alia*, claimant had not "directed [the court's] attention to any

medical evidence that was disregarded" related to alleged functional limitation). Accordingly, Plaintiff has shown no reversible error. *See Oldham*, 509 F.3d at 1257-58 (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views).

## V.     Conclusion

For the reasons set forth above, the ALJ's decision is supported by substantial evidence and reflects the application of proper legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed.**

**SO ORDERED** this 16th day of August, 2023.


Christine D. Little
United States Magistrate Judge